# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRIMERICA LIFE INS. CO.,** | : | CIV NO. 3:16-CV-2429 |
| **Plaintiff,** | : | (Judge Mariani) |
| v. | : | (Magistrate Judge Carlson) |
| **CHRISTOPHER COLEMAN and JOSHUA COLEMAN,** | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

This is an interpleader action filed by Primerica Life Insurance Company, which invites us to resolve a dispute between two brothers, Joshua and Christopher Coleman, rival claimants to the proceeds of the insurance policy of an insured decedent, their father Gerald Coleman. The case comes before us for consideration of the following three motions: (1) a motion for summary judgment, or default judgment, filed by the plaintiff, Primerica, against the two interpleader defendants (Doc. 19); (2) a motion for summary judgment filed by interpleader defendant Joshua Coleman against the remaining interpleader defendant, Christopher Coleman, who has not responded to the lawsuit in any fashion (Doc. 22); and (3) a motion filed by Primerica which seeks the dismissal of a counter-claim filed

against it by defendant and cross-claim plaintiff Joshua Coleman. (Doc. 9). For the reasons set forth below, it is recommended that all of these motions be granted.

## II. Statement of Facts and of The Case

The factual background of this dispute can be simply stated: On October 2, 1987, Gerald C. Coleman submitted an Application for Life Insurance to Primerica's corporate predecessor Massachusetts Indemnity and Life Insurance Company ("MILICO"), to insure his life in the face amount of $90,000.00. (Doc. 1, ¶¶ 7-9, Doc. 6, ¶¶ 7-9). Coleman was then issued policy number 0412525313 insuring his Coleman's life in the amount of $90,000.00, pursuant to the terms of this insurance policy. (Doc. 1, ¶ 10 and Exhibit "B").

When this policy was first issued, the principal beneficiary of the coverage insuring Gerald Coleman's life was his wife, Amy Coleman, and the contingent beneficiaries were the children of their marriage. (Id., ¶ 11.) On June 24, 2011, Gerald Coleman submitted a Policy Change Application to Primerica seeking to change the principal beneficiary under the Policy from his wife to his two sons, Defendants Christopher G. Coleman and Joshua J. Coleman, and to delete the contingent beneficiary. (Id., ¶ 12.) In a July 13, 2011 letter to Gerald Coleman, Primerica confirmed these changes as of June 24, 2011. (Id., ¶ 13.)

Some four years later, on October 26, 2015, Gerald Coleman submitted a signed letter to Primerica, which sought to designate his son Joshua Coleman as

the sole principal beneficiary of the coverage insuring his life under the Policy. (Id., ¶ 14.) On October 27, 2015, Primerica confirmed in writing this change of beneficiary, effective as of October 26, 2015 and further confirmed that no contingent beneficiary of that coverage had been designated. (Id., ¶ 15.)

Six months later, on May 1, 2016, Gerald Coleman died in Pennsylvania. (Id., ¶ 16.) With the apparent written consent of both Joshua and Christopher Coleman, the $90,000.00 benefit payable under the policy at the time of Gerald Coleman's death was subsequently reduced by $1,900.00 for his funeral expenses, leaving a remaining balance of the benefits payable under the policy of $88,100.00, plus any applicable interest. (Id., ¶¶ 17-19.)

Primerica then received two competing claims for these policy proceeds from Coleman's children, Joshua and Christopher Coleman. On June 1, 2016, Joshua Coleman, the last beneficiary designated by Gerald Coleman, submitted a formal claim to Primerica for the Remaining Benefit under the policy. (Id., ¶ 24.) At approximately the same time, on May 31, 2016, Primerica received a letter dated May 24, 2016 from Christopher Coleman challenging Joshua Coleman's designation as the sole beneficiary of the Remaining Benefit under this policy. (Id., ¶ 20.) Christopher Coleman's letter alleged that Gerald Coleman actually intended to make him, and not Joshua Coleman, the sole beneficiary of the death benefit payable under the Policy and stated the Christopher Coleman was

"overwhelmingly concerned that [Joshua Coleman had] forged [Gerald Coleman's] signature for change [sic] of beneficiary…." (Id., ¶ 22.) Christopher Coleman requested in this May 24, 2016 letter that he be "returned as beneficiary" of the Remaining Benefit "the way it was supposed to be." (Id., ¶ 23.)

Presented with these competing demands for the policy proceeds, Primerica followed the course expressly authorized by law and commenced this action on December 7, 2016 naming the competing Coleman brothers as defendants and seeking interpleader relief pursuant to Fed. R. Civ. P. 22. (Doc. 1.) Christopher and Joshua Coleman both received copies of this interpleader complaint and signed waiver forms indicating that they both understood that they needed to respond to the complaint within 60 days, and if they failed to respond default might be entered against them. (Docs. 7 and 8.) Joshua Coleman then promptly answered the interpleader complaint and filed a cross-claim against his brother, Christopher Coleman, alleging that he was entitled to judgment in his favor on this insurance policy since he was the last named beneficiary on the policy. (Doc. 6.) Joshua Coleman also lodged a counter-claim against Primerica, alleging that Primerica should not have followed the course permitted by law and filed this interpleader action but rather should simply have paid the policy proceeds directly to him.

For his part, Christopher Coleman has done nothing. He has not responded to Primerica's interpleader complaint. He has not addressed Joshua Coleman's cross-claim. He has not submitted his own cross-claim asserting any rights to these policy proceeds. Nor has he chosen to advance and attempt to prove any of the factual allegations which he initially made in his May 2016 correspondence to Primerica. Christopher Coleman's complete inaction, in turn, has led Primerica to request, and receive, a clerks' entry of default against Christopher Coleman. (Docs. 15 and 16.)

It is against this backdrop that Primerica and Joshua Coleman both seek summary judgment, or default judgment, against the unresponsive defendant, Christopher Coleman. (Docs. 19 and 22.) Primerica, in turn, has moved to dismiss the counter-claim lodged against it by Joshua Coleman, arguing that it cannot be held liable for following a procedure expressly authorized by law and filing an interpleader complaint to resolve the merits of these competing claims. (Doc. 9.)

For the reasons set forth below, we recommend that all of these motions be granted.

### III. Discussion

#### A. Primerica and Joshua Coleman Are Entitled to Judgment in Their Favor Against Christopher Coleman

At the outset, Primerica and Joshua Coleman both seek judgment in their favor against Christopher Coleman, the rival claimant to these funds who has never

sought to advance, present or litigate his claim to these insurance proceeds despite having been provided ample opportunity over the past nine months to articulate this claim. Primerica and Joshua Coleman alternately seek a judgment in their favor on Christopher Coleman's claims, either by summary judgment or default judgment.

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment, and provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(a). Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.

Default judgments, in turn, are governed by Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55 a default judgment may be entered whenever the party against whom the default judgment is sought was served and "has failed to plead or otherwise respond." Fed. R. Civ. P., Rule 55(a). Furthermore, in ruling upon requests relating to default judgments it is well-settled that these decisions are:

> [L]eft primarily to the discretion of the district court. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951). We recognize, however, that this court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to [deny or] set aside the default judgment "so that cases may be decided on their merits." Id. at 245. See also Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir. 1983); Feliciano v. Reliant Tooling Company, Ltd., 691 F.2d 653, 656 (3d Cir. 1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982). Nevertheless, we do not [deny or] set aside the entry of default and default judgment unless we determine that the district court abused its discretion. We require the district court to consider the following factors in exercising its discretion . . . : (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. Gross v. Stereo Component Systems, Inc., 700 F.2d at 122; Feliciano v. Reliant Tooling Company, Ltd., 691 F.2d at 656; Farnese v. Bagnasco, 687 F.2d at 764.
>
> United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984).

In this case, entry of default or summary judgment against Christopher Coleman, a wholly unresponsive defendant, is now appropriate. Christopher Coleman was timely served, but has not yet responded to this complaint, replied to Joshua Coleman's cross-claim, or otherwise litigated any claim of right to these insurance proceeds. On these facts, default judgment against Christopher Coleman is entirely appropriate. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1147 (3d Cir. 1990) (affirming entry of default judgment against party who failed to comply with court order).

Moreover, Joshua Coleman is also entitled to summary judgment in his favor with respect to the disputed designation of beneficiary to the proceeds of Gerald Coleman's insurance policy. In the absence of any effort by Christopher Coleman to litigate or present any claims of forgery or fraud, the undisputed evidence presented by Joshua Coleman reveals that his father, Gerald Coleman, designated Joshua Coleman as the sole beneficiary of this policy some six month prior to his death. "Under Pennsylvania law, there are [several] ways to revoke a designation of beneficiary contained in a life insurance policy which are relevant to this discussion. First, a policyholder can designate a new beneficiary by complying with the policy's terms pertaining to a change of beneficiary." Manufacturers Life Ins. Co. v. Dougherty, 986 F. Supp. 928, 931 (E.D. Pa. 1997). When considering a policy holder's change of beneficiary designation, it is well settled that:

> Pennsylvania law, . . . , is to the effect that when an insured wishes to change the beneficiary, he can do so without strict and literal compliance with the policy terms. Thus, it is not always necessary that the form supplied by the company be used or that the change be endorsed on the policy. Substantial . . . compliance with policy provisions is sufficient. All that is required is that every reasonable effort under the circumstances be made to effect the change. Kit v. Stecker, 109 F.2d 281 (3d Cir. 1940); Ruggeri v. Griffiths, 315 Pa. 455, 173 A. 396 (1934); Riley v. Wirth, 313 Pa. 362, 169 A. 139 (1933). Cf. Breckline v. Metropolitan Life Insurance Co., 406 Pa. 573, 178 A.2d 748 (1962). See also Couch on Insurance 2d 28.66; Vance on Insurance 109 (3d ed.).
>
> Provident Mut. Life Ins. Co. of Philadelphia v. Ehrlich, 508 F.2d 129, 132–33 (3d Cir. 1975).

In sum:

> With regard to an insured's intent to change the beneficiary on his insurance policy, Pennsylvania courts adhere to the equitable doctrine of "substantial compliance." <u>Provident Mutual Life Ins. Co. v. Ehrlich</u>, 508 F.2d 129, 132-33 (3d Cir. 1975). This doctrine provides that courts shall "give effect to an insured's intention to change the beneficiary on an insurance policy where, even in the absence of strict compliance with the policy provisions, the insured has made every reasonable effort under the circumstances to comply with those provisions." <u>Cipriani v. Sun Life Ins. Co. of Am.</u>, 757 F.2d 78, 81 (3d Cir. 1985) (internal citations omitted). "The essential inquiry is whether ... [it has been] ... shown that the insured intended to execute a change to such an extent that effect should be given it." <u>Id</u>. (citing <u>Prudential Ins. Co. of Am. v. Bannister</u>, 448 F.Supp. 807 (W.D. Pa. 1978)).
>
> <u>Kerekes v. Primerica, Inc.</u>, No. 1:14-CV-1665, 2015 WL 12516495, at *5 (M.D. Pa. Sept. 24, 2015).

In this case, Gerald Coleman's insurance policy with Primerica provided as follows with respect to designation of beneficiaries:

**PART 3**
**BENEFICIARY PROVISIONS**
\* \* \*

*CHANGE OF BENEFICIARY* – **You can change a Beneficiary by Notice to Us.** You can only change a Beneficiary while the Insured is alive. A Beneficiary designated irrevocably on Our records may not be changed except with the written consent of that Beneficiary. **A Beneficiary change will take effect on the date You signed the Notice to Us.** If the Insured died before We receive this Notice, the change is effective, subject to any prior payment of proceeds.
\* \* \*

(Doc. 1, Exhibit "B" 9.) (emphasis added).

The policy further specifically defined "Notice to Us" as "Information We have received which is written, signed by You, and acceptable to Us." (<u>Id</u>. At 8.)

In the instant case, no party has presented competent evidence which contests the fact that on October 26, 2015, Gerald Coleman submitted a signed letter to Primerica, which sought to designate Joshua Coleman as the sole principal beneficiary of the coverage insuring his life under the Policy. (Id., ¶ 14.) On October 27, 2015, Primerica confirmed in writing this change of beneficiary, effective as of October 26, 2015 and further confirmed that no contingent beneficiary of that coverage had been designated. (Id., ¶ 15.) While Christopher Coleman wrote to Primerica prior to the filing of this lawsuit disputing this designation, and inspiring this interpleader action, he has elected not to challenge this designation in court through competent proof of fraud or forgery, despite being provided ample opportunity to do so. Therefore, the current, and undisputed, evidence shows that the last designation of beneficiary received from Gerald Coleman, and confirmed by Primerica, designated the only active litigant in this case, Joshua Coleman, as the sole beneficiary of this policy. This written designation substantially complied with the terms of the policy, was deemed satisfactory by Primerica, was never disputed by Gerald Coleman after Primerica sent him notice of the change of beneficiary, and under Pennsylvania law should now be given full legal effect in the absence of any evidence undermining this otherwise lawful designation. Therefore, Primerica and Joshua Coleman are

entitled to judgment in their favor and against Christopher Coleman on any claim by Christopher Coleman to these remaining insurance proceeds.

### B. Joshua Coleman's Counter-claim Against Primerica Should Be Dismissed.

While this recommendation regarding the pending summary judgment motions resolves the principal question in the case, the entitlement of the competing claimants to the insurance proceeds from Primerica's insurance policy issued to Gerald Coleman, there remains one additional legal issue which must be addressed. In his answer to this interpleader complaint, Joshua Coleman lodged a counter-claim against Primerica. This counter-claim alleged that: "The failure [by Primerica] to pay the contracted benefits to the contractually designated beneficiary Joshua J. Coleman, was and is arbitrary and vexatious and require attorney's fees under 42 Pa. C.S.A. §2503, to Counterclaim Plaintiff for this action." (Doc. 6, ¶37.) Thus, Joshua Coleman's counter-claim against Primerica proceeded from the curious premise that Primerica engaged in a wrongful and arbitrary act when it followed the legal course expressly authorized by Rule 22 of the Federal Rules of Civil Procedure and filed an interpleader complaint in order to obtain a judicial resolution of these competing insurance policy claims submitted by Joshua and Christopher Coleman.

Primerica has now moved to dismiss this counter-claim, arguing that it cannot be held liable by Joshua Coleman for doing what the law allows and

12

submitting this claim dispute to the courts for resolution. (Doc. 9.) We agree that resort to the procedure prescribed by law does not create any counter-claim liability on Primerica's part, and recommend that the court grant this motion to dismiss.

On this score we note that the course followed by Primerica once it was confronted by competing claims for these insurance policy benefits is a path that is expressly authorized by the Federal Rules of Civil Procedure, specifically Rule 22, which provides that: "Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P., Rule 22(a)(1). The vehicle of an interpleader lawsuit like the case filed here serves an important and salutary purpose. As the United States Court of Appeals for the Third Circuit has explained:

> The purpose of the interpleader device is to allow "a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." 7 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1704 (3d ed.2001), at 540–41 ("Wright & Miller"). Accordingly, interpleader allows a stakeholder who "admits it is liable to one of the claimants, but fears the prospect of multiple liability[,] ... to file suit, deposit the property with the court, and withdraw from the proceedings." Metro Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir.2007). The result is that "[t]he competing claimants are left to litigate between themselves," while the stakeholder is discharged from any further liability with respect to the subject of the dispute. Id.
>
> Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 262 (3d Cir. 2009).

Given the important goals served through interpleader litigation, it has been held that, absent unusual circumstances, an interpleader plaintiff cannot be held liable for the act of resorting to the law to resolve competing claims to some property. As the appellate court has cogently explained:

> To allow [an insurance company interpleader plaintiff] to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy—namely, that a "stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim." Bierman v. Marcus, 246 F.2d 200, 202 (3d Cir. 1957). Put another way, where a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty. See Lutheran Bhd. v. Comyne, 216 F. Supp. 2d 859, 862 (E.D. Wis. 2002) (holding that the bringing of a valid interpleader action shields a plaintiff from liability for counterclaims where those "counterclaims are essentially based on the plaintiff's having opted to proceed via an interpleader complaint rather than having chosen from among competing adverse claimants"); Metropolitan Life Ins. Co. v. Barretto, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001) (holding that interpleader protection extends to counterclaims that arise from "utilizing the protections afforded by the interpleader").
>
> Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 265 (3d Cir. 2009).

In our view, this basic tenet of interpleader practice controls here and compels the dismissal of Joshua Coleman's interpleader counter-claim against Primerica. Fairly construed, "[h]ere, each of [Coleman's] counterclaims concern [Primerica's] failure to resolve its investigation in his favor and pay out the life insurance proceeds to him. . . . . As such, none of the counterclaims is truly independent of who was entitled to the life insurance proceeds, which is the issue

the interpleader action was brought to settle." Prudential Ins. Co. of Am. v. Hovis, 553 F.3d 258, 264–65 (3d Cir. 2009). In this setting, Primerica is entitled to decline the competing invitations of the disparate claimants to resolve this dispute in their favor, and may turn to the courts for an answer to this conundrum. Indeed, under these circumstances, "[t]o allow [an insurance company interpleader plaintiff] to be exposed to liability under these circumstances would run counter to the very idea behind the interpleader remedy—namely, that a 'stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim.' Bierman v. Marcus, 246 F.2d 200, 202 (3d Cir. 1957)." Id. at 265.

This case aptly illustrates why Primerica's resort to an interpleader lawsuit was entirely appropriate. While Joshua Coleman faults Primerica for not doing more, and for failing to resolve this dispute in his favor without filing an interpleader action, the undisputed facts show that the course chosen by Primerica was both legally authorized and commercially prudent. By June of 2016, Primerica was confronted by two competing claims for these insurance proceeds. One claim was advanced by Joshua Coleman, the last designated beneficiary on Gerald Coleman's insurance policy. The second claim, however, was made by Christopher Coleman, Joshua Coleman's brother and Gerald Coleman's son, who was previously listed by the decedent as a policy beneficiary. Christopher Coleman's May 2016 letter to Primerica unequivocally asserted a claim to these insurance

proceeds, and leveled serious allegations of fraud, forgery and other misconduct against his brother, Joshua Coleman. While Christopher Coleman later elected to abandon these claims when he was presented with this interpleader lawsuit and was required to prove what he had claimed, Primerica prudently concluded that the nature of these competing claims, and the grave allegations made in connection with these claims, warranted a judicial determination of the claimants' respective rights. Given the obvious legal peril which these claims created for Primerica, the plaintiff's resort to this legal process was both prudent and proper. Therefore, this reliance on the courts to resolve the claimants' dispute does not give rise to any civil liability on Primerica's part, and this counter-claim should be dismissed.

## IV. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Primerica and Joshua Coleman's motions for summary judgment or default judgment against Christopher Coleman, (Docs. 19 and 22) be GRANTED. IT IS FURTHER RECOMMENDED that Primerica's motion to dismiss Joshua Coleman's counter-claim (Doc. 9), also be GRANTED. Finally, IT IS RECOMMENDED that Primerica and Joshua Coleman be directed to provide the court with an appropriate form of judgment order resolving and closing this case within 21 days of the entry of any order adopting this Report and Recommendation.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3d day of October, 2017.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge